United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

KEVIN COOK,  No. C 06-3027 JL

    Plaintiff,

    v.  **ORDER AFTER TRIAL**

FEDERAL CREDIT CORPORATION,

    Defendant.
_____/

**I. Order After Trial**

    **A.    Introduction**

This case came on for bench trial, neither party having demanded a jury. Both parties consented to the jurisdiction of this Court pursuant to 28 U.S.C. §636(c). After a one-day trial at which Plaintiff testified, the Court permitted the parties to file post-trial briefs and then took the matter under submission. The Court considered all the pleadings and arguments of counsel, the evidence and testimony offered at trial, and the record in this case, and hereby finds that all Plaintiff's claims fail and that judgment should be entered for Defendant.

    **B.    Factual and Procedural Background**

This case arises out of two debt collection letters that were sent to Plaintiff Kevin Cook by Defendant Federal Credit Corporation on January 26, 2006, and September 15, 2006. Cook claims that these letters violated both the federal Fair Debt Collection Practices

Act, 15 U.S.C. §1692 *et seq.* and the Rosenthal Fair Debt Collection Practices Act, California Civil Code §1788 *et seq.*

Cook claims $5,000 in actual damages and unspecified damages for emotional distress as a result of the letters.

### 1. The January 2006 Letter

The January 2006 letter was addressed to Cook in Santa Rosa, California. It showed a balance due of $6939.57 and offered "Tax Season Savings Save 50% on Your Debt Through 03/07/06."

The letter said the office had previously attempted to contact Cook regarding the account, but received no response. It expressed confidence that he would want to take advantage of the settlement offer. It warned, however, "As you may be aware a refusal to pay this debt is considered to be a triggering event subjecting us to 26 U.S.C. § 6050P of the Internal Revenue Code requiring us to file IRS Form 1099-C on the amount you are refusing to pay. You should be aware that this filing, however, does not preclude further collection efforts."

Cook was given three options:

- Payment in full of 50% of the total amount owing us is enclosed. All further efforts to collect this debt will be stopped.
- I intend to pay this debt voluntarily. Please contact me at the telephone numbers below, so that we can make arrangements to resolve this matter. Daytime Phone Number ( ) ___ ____ Nighttime Phone Number ( ) ___ ____ .
- I refuse to pay this bill and realize further efforts may be taken to collect this debt on an involuntary basis.

The letter provided a toll-free telephone number and included the disclaimer, "This is an attempt to collect a debt by a debt collector. Any information obtained will be used for that purpose." A form was provided for payment by credit card.

The exhibit Cook submitted at trial bore his handwritten message after a check mark at Option Three that, "I refuse to pay this bill and realize further efforts *will be considered harassment! Legal action will be taken against you !!!"* (Italicized portion is presumably Cook's handwritten message.) (Plaintiff's Trial Exhibit 1)

### 2. The September 15 Letter

The September 15 letter was addressed to Cook in Bakersfield, California and purported to make a "Special Credit Offer." It showed a balance owing of $7169.74 on his account with First Omni, but offered to give him a credit on the account that "may be up to $3943.46," or more than 50% off the balance owing. The letter advised him that settlement must be arranged on or before September 28 to determine the amount of the credit authorized to be deducted from his account balance.

This letter also gave Cook three options:

- I cannot do a lump sum settlement at this time but I would like to settle this matter voluntarily. Please contact me _____.
- I have deducted the credit you are offering me from the balance on my account. My check for $ _____ is enclosed herewith, to settle my account in full.
- I refuse to pay this account. You may take whatever steps you feel necessary.

The letter included a toll-free telephone number, the disclaimer and a form for payment by credit card. Federal assured Cook that upon payment, the account would be reported as "Paid in Full" to the three major credit bureaus - - TransUnion, Equifax and Experian. (Plaintiff's Trial Exhibit 2)

### 3. Cook's other debts

Plaintiff admitted at trial that, in addition to the First Omni account, he had accumulated and stopped paying $54,218.37 in debts that were eventually discharged in bankruptcy, and that he owed over $76,000 in back child support. The Court notes these as evidence that Cook was not a least sophisticated debtor, but was familiar with the ins

and outs of debt collection. He testified that he had made payments on some of his other debts, but desisted on the advice of his bankruptcy attorney. (Trial testimony of Kevin Cook)

### 4. Allegations of the Complaint

Cook alleges that Federal Credit violated the FDCPA in the following ways :

1) violation of 15 U.S.C. §1692e(1) by falsely representing or implying the debt was vouched for, bonded, or affiliated with the United States;
2) violation of 15 U.S.C. §1692e(5) by threatening to take action that cannot legally be taken;
3) violation of 15 U.S.C. § 1692e(8) by threatening to communicate to any person credit information which is known to be false.
4) violation of 15 U.S.C. §1692d by engaging in harassment of Plaintiff; violation of 15 U.S.C. §1692e by using deceptive means in connection with collecting a debt, and violation of 15 U.S.C. §1692f by using unfair or unconscionable means to collect or attempt to collect a debt.

(Complaint)

Cook alleges the following violations of the Rosenthal Act:

1) violation of Civil Code §1788.10(e), threatening to seize or garnish property or wages of the debtor when such action is not permitted by law;
2) violation of Civil Code § 1788.13j by falsely representing that a legal proceeding has been, is about to be, or will be instituted unless payment of a consumer debt is made;
3) violation of Civil Code §1788.17 by violating the provisions of the Federal Fair Debt Collection Practices Act.

Cook seeks actual damages, statutory damages pursuant to 15 U.S.C. §1692k and California Civil Code §1788.30(b), reasonable attorney's fees and costs pursuant to 15 U.S.C. §1692k, and such other relief as the Court may find just and proper. (Complaint)

**D. ANALYSIS**

**1. The word "Federal" in Defendant's corporate name is not enough to imply association with the United States.**

It is a crime punishable by fine or imprisonment to use the word "Federal" in the course of collecting or aiding in the collection of a private debt, "for the purpose of conveying and in a manner reasonably calculated to convey the false impression that such communication is from a department, agency, bureau, or instrumentality of the United States, or in any manner represents the United States." 18 U.S.C. § 712.

It is the purpose for which it is used, not the mere word itself, which criminalizes the word "federal."

In the case at bar, Federal Credit indeed uses the word "federal" in the course of collecting private debts. However, it is Cook's burden to prove that Federal Credit's purpose was to convince him that it was communicating on behalf of an agency of the U.S. Government.

The case cited by Plaintiff is inapplicable. In that case the court relied on the Defendant's depiction of a bird icon with its wings spread, "grasping olive branches in its right talon and arrows in its left talon," presumably mimicking an official insignia of the U.S. Government, to find that the debt collector violated the law because its purpose was to convey the false impression that its collection letter was from an agency of the U.S. Government. *Adams v. First Federal Credit Control, Inc.*, 1992 WL 131121 (N.D.Ohio 1992). In the case at bar, there is no *faux* eagle insignia on the Federal Credit Corp. letterhead, nor does Cook offer any evidence whatever, much less a preponderance, that he was deceived into believing that Federal Credit was an arm of the federal government, or acting on behalf of the federal government. At trial, Cook testified that he didn't know if Federal Credit Corp. was associated with the U.S. Government. He did not testify that he thought it was, or that he was confused. Cook fails to meet his burden of proof that there was an illegal purpose for the use of the word "federal" in Defendant's corporate name.

**2. Defendant's use of the term "involuntary" in Federal Credit Corp.'s letter does not of itself imply legal action, in violation of the FDCPA. Federal Credit could continue to attempt to collect even if the debt was time-barred.**

Plaintiff contends that the following language is a threat of legal action: "I refuse to pay this bill and realize further efforts may be taken to collect this debt on an involuntary basis."

As authority for this position, Plaintiff cites *Taylor v. Quall*, 471 F.Supp.2d 1053 (C.D.Ca.,2007) and *Perretta v. Capital Acquisitions & Management Co.*, 2003 WL 21382757 (N.D.Cal.,2003). However, neither case stands for the proposition stated by Plaintiff.

The unpublished *Perretta* case is the more instructive of the two cases. In *Perretta,* a law firm was attempting to collect a debt. The firm first sent a letter threatening to report Plaintiff to a credit bureau. Then, in a follow-up call, a firms representative told Plaintiff that if he refused to work with him, further steps would be taken. It was the two actions together, the letter and the call, both initiated by a law firm, that persuaded the court to find a FDCPA violation.

A court in this district reiterated this analysis in *Abels v. JBC Legal Group, P.C.*, 428 F.Supp.2d 1023 (N.D. Cal. 2005). "This Court recognizes that to the least sophisticated debtor, a letter from an attorney is likely to cause concern. See *Jenkins v. Union Corp.*, 999 F.Supp. 1120, 1137 (N.D.Ill.1998) ('in cases where the likelihood of legal action is not clear from the language, the letter's source can be determinative, especially if it purports to be from an attorney')". *Abels, Id.* at 1028

In the case at bar, the letter did not originate with an attorney. Nor did it threaten legal action. Employing the least-sophisticated debtor standard, the term "involuntary" could just as well mean that Plaintiff would be forced to pay to clear up a negative credit report of the debt.

United States District Court

For the Northern District of California

Not even all letters originating with an attorney violate the FDCPA. Courts have not endorsed Cook's broad interpretation to establish liability. "However, this Court is not willing to extend the holding of *Jenkins* to all attorney attempts to collect on a debt, as Plaintiffs advocate during oral argument, because a reading of the two cases relied on in *Jenkins* reveals that the language of the letter from an attorney must threaten litigation. See, e.g., *U.S. v. Nat'l Financial Serv., Inc.*, 98 F.3d 131, 134 (4th Cir.1996) (letters from attorney held to threaten litigation included, language such as: "I will be compelled to consider the use of legal remedies," "I have filed suits . . . on small balance accounts just like yours," "Only your immediate payment will stop further legal action"), *Russey v. Rankin*, 911 F.Supp. 1449, 1454 (D.N.M.1995) (letter purporting to be from an attorney stated "we have the legal right to file a lawsuit" held to clearly threaten litigation). *Id.* at 1028. There is no such language in either of Federal Credit's letters to Cook which threaten litigation.

In addition, without a threat of litigation, an attempt to collect even a time-barred debt is not, by itself, a violation of the federal FDCPA. *Freyermuth v. Credit Bureau Services, Inc.*, 248 F.3d 767, 771 (8th Cir.2001) ("In the absence of a threat of litigation or actual litigation, no violation of the [federal] FDCPA has occurred when a debt collector attempts to collect on a potentially time-barred debt that is otherwise valid"). The holding in *Freyermuth* is particularly persuasive because in California, the statute of limitations is an affirmative defense waivable by not being asserted, and as such "a cause of action is not extinguished or impaired by the mere passage of time, and the maintenance of the claim is not precluded simply by the running of the statutory period." *Adams v. Paul*, 11 Cal.4th 583, 597 (1995). "In fact, if a defendant does not affirmatively invoke the defense of the statute of limitations, the defense is waived or forfeited. *Minton v. Cavaney*, 56 Cal.2d 576 (1961). Thus, since the underlying debts are not substantively affected, an attempt to collect on the time-barred debts, standing alone, is not a violation of the federal FDCPA." *Id.* In the case at bar, Federal Credit was entitled to continue to try to collect on even a time-barred debt, since Cook might have waived the statute of limitations defense by not asserting it.

The language in the letter at issue clearly did not threaten litigation even to the least sophisticated debtor, which Cook is not. Words such as "suit," "action," "case," or "litigation"

do not appear in the letter. There is no indication that litigation is imminent. Since the text of the letter did not threaten litigation, and there were no additional communications which could have led him to believe that litigation was imminent, Cook's claim that Federal Credit violated the FDCPA by attempting to collect on a time-barred debt fails.

### 3. Defendant's advice of the requirement to report discharge of Plaintiffs' debt to the IRS was not false, and Federal Credit could continue to attempt to collect the debt after filing the 1099-C.

Plaintiff claims that no "identifiable event" occurred which would require Federal Credit to report a discharge of his debt to the Internal Revenue Service. Federal Credit claims that the fact that significant time passed during which Cook didn't make a payment on his debt is itself an "identifiable event" which requires Federal Credit by law to report the discharge of the debt to the IRS. Federal Credit is correct.

As provided in 26 C.F.R. § 1.6050P-1, a creditor may discharge a debt, creating an identifiable event, and triggering the reporting requirement that the creditor file a Form 1099-C with the IRS, when any number of things happen. The example which is most applicable to the circumstances of this case appears under the regulations governing the FDCPA:

"Expiration of non-payment testing period. There is a rebuttable presumption that an identifiable event under paragraph (b)(2)(i)(H) of this section has occurred during a calendar year if a creditor has not received a payment on an indebtedness at any time during a testing period (as defined in this paragraph (b)(2)(iv)) ending at the close of the year. The testing period is a 36-month period increased by the number of calendar months during all or part of which the creditor was precluded from engaging in collection activity by a stay in bankruptcy or similar bar under state or local law. The presumption that an identifiable event has occurred may be rebutted by the creditor if the creditor (or a third-party collection agency on behalf of the creditor) has engaged in significant, bona fide collection activity at any time during the 12-month period ending at the close of the calendar year, or if facts and circumstances existing as of January 31 of the calendar year

following expiration of the 36-month period indicate that the indebtedness has not been discharged." 26 C.F.R. 1.6050P-1(b)(2)(G)(iv).

Cook testified that he filed for bankruptcy protection on October 21, 2004 and that his debts which were part of that proceeding were discharged one year later. The debt to First Omni, which Federal Credit was attempting to collect was not discharged in bankruptcy. Plaintiff testified that he had made no payments on the First Omni account for a significant period of time, more than 36 months. Therefore, the evidence shows that an "identifiable event" did in fact occur.

Cook also contends that because Federal Credit did not discharge his debt and intended to continue trying to collect it, it could not claim his non-payment was an identifiable event obliging it to file a 1099-C with the IRS. This is not the law.

The filing of a 1099-C does not prevent further collection efforts. *Debt Buyers' Ass'n v. Snow*, 481 F.Supp.2d 1, 5 -6 (D.D.C.2006). In the *Debt Buyers'* case, the court noted that debt buyers were free to include in their statement to a debtor that "(1) they are issuing a 1099 because one or more of the circumstances in Treasury Regulation §1.6050P-1 have been met, (2) that the business intends to, or may, continue collecting the debt until barred by state or federal law governing debt collection, and (3) that the recipient should consult with a tax advisor if he or she does not know whether income arises under 26 U.S.C. §§ 61(a)(12) and 108 in his or her particular circumstances." *Debt Buyers*, 481 F.Supp.2d at 13.

This Court accordingly finds that Cook's non-payment of this debt during the period following his discharge in bankruptcy constituted an identifiable event, which could trigger Federal Credit's obligation to file a Form 1099-C with the IRS, if its collection activity against him proved fruitless, whether or not it decided to cease efforts to collect. Therefore, Federal Credit did not make a false statement when it warned him that his failure to pay the debt could trigger its filing a 1099-C with the IRS, and that it would continue to try to collect the debt.

**4. Sending the two collection letters was not threatening, harassing or unconscionable action.**

Cook contends that Federal Credit's continuing to send him collection letters, after a time when he claims the debt became uncollectible, is harassment. As discussed above, Federal Credit still had the option of continuing to attempt to collect the debt even after notifying the IRS that Cook had not paid and even if the debt was potentially time-barred. For these reasons, there is no basis for Cook's claim of harassment.

**Conclusion**

For all the above reasons, This Court finds no violations of either the Federal Fair Debt Collection Practices Act or California's Rosenthal Act. Plaintiff Kevin Cook's complaint is dismissed with prejudice. Plaintiff shall take nothing by his complaint. The clerk shall enter judgment for Defendant Federal Credit Corp. Costs to be taxed against Plaintiff.

IT IS SO ORDERED.

DATED: March 7, 2008

_____
James Larson
Chief Magistrate Judge

G:\JLALL\CHAMBERS\CASES\CIVIL\06-3027\Order-after-Trial.wpd